**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| ERICA MORSE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>MUCK RACK LLC,<br><br>Defendant. | Case No.<br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

On behalf of herself and all others similarly situated, Plaintiff Erica Morse complains and alleges as follows based on personal knowledge as to herself, the investigation of her counsel, and information and belief as to all other matters, and demand trial by jury. Plaintiff believes that substantial evidentiary support will exist for the allegations in this complaint, after a reasonable opportunity for discovery.

## INTRODUCTION

1. This case is about upholding the rights of millions of journalists who have never interacted with Defendant Muck Rack LLC ("Muck Rack" or "Defendant") but who have nonetheless had their names and identities misappropriated and used by Defendant for the commercial purpose of advertising and promoting its own products and services.

2. Defendant has built a lucrative business centering around its public relations management software.

3. Defendant advertises and sells its public relations management software through MuckRack.com (the "Website").

4. On the Website, Defendant maintains a massive database of personal information on hundreds of thousands of journalists.

5. To maximize the revenue it generates from paid subscriptions to its public relations management software, Defendant misappropriates the names of every journalist whose personal information it has amassed in its database. Defendant then uses these individuals' names and identities to advertise and promote subscriptions to its products and services—all without asking for, let alone obtaining consent from, any of those individuals prior to doing so.

6. Defendant does this by publishing online "profile" pages each centering around the name and identity of one journalist. Each such profile page prominently displays one journalist's name, employer(s), and other personally identifying details. Each profile page also prominently advertises Defendant's own products and services.

7. Further, each profile page uses the name of the journalist to whom it corresponds in search engine optimization ("SEO") techniques. These SEO techniques are built into each profile page's design, appearance, and source code. They are designed to make the page rank highly in search engine results whenever someone searches for the name of the journalist to whom the page corresponds.

8. Each profile page advertises and promotes Defendant's public relations software platform. Indeed, Defendant directly incorporates each journalist's name and identity into these advertisements. Each profile page further contains numerous buttons and hyperlinks which route visitors directly into Defendant's promotional sales pipeline.

9. In this way, Defendant uses the names and identities of Plaintiff and hundreds of thousands of other journalists to advertise and sell subscriptions to its products and services, without having provided prior notice to, much less obtained consent from, any of these people.

10. Indiana's Right of Publicity Act ("IRPA") clearly prohibits what Defendant has done. The IRPA prohibits companies like Defendant from using an "aspect of a personality's right of publicity for a commercial purpose" without having first obtained the person's consent. *See* IN Code § 32-36-1-8(a). As alleged herein, Defendant systematically used Plaintiff's and millions of other Americans' names and identities to advertise its products and services, without having asked for, much less obtained, any of their consent—in clear violation of the IRPA.

11. Accordingly, Plaintiff brings this action, individually and on behalf of the proposed Class defined below, to redress and put a stop to Defendant's violations of the IRPA.

## PARTIES

12. Defendant Muck Rack LLC is a Delaware corporation that maintains its headquarters and principal place of business in Miami Beach, Florida. Defendant owns and operates the Website Muckrack.com, where it advertises and sells products and services to persons throughout the United States, including in and throughout Indiana.

13. Plaintiff Erica Morse is a natural person and is, and at all times relevant hereto was, a resident of Michigan City, Indiana.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) at least one member of each of the putative Class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000 with respect to each of the putative Class, exclusive of interest and costs, and (iii) there are at least 100 members of each of the putative Class.

15. Personal jurisdiction and venue are proper because Erica Morse is, and at all times relevant hereto was, a citizen and resident of Michigan City, Indiana, which is within this judicial district, and her injuries arising from Defendant's conduct were borne within this judicial district.

16. Personal jurisdiction is further proper because Defendant intentionally misappropriates the names identities of Plaintiff and many other Indiana residents, targets its advertising on the Website (which misappropriates those names and identities) towards Indiana residents, and sells products and services to Indiana residents and businesses.

17. Defendant knowingly and intentionally misappropriates the names and identities of Plaintiff and the Class members, knows that Plaintiff and many of the Class members reside in Indiana, and knows that the resulting harm will be suffered by Plaintiff and those Class members in Indiana.

## APPLICABLE STATUTORY SCHEME

### I. Indiana Right of Publicity Act

18. Indiana protects its citizens' rights of publicity through the IRPA.

19. The IRPA prohibits companies like Defendant from, *inter alia*, using an individual's name or likeness to advertise or promote its own products or services. Specifically, Section 8(a) of the IRPA states, in pertinent part:

> A person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for one hundred (100) years after the date of the personality's death without having obtained previous written consent from a person specified in section 17 of this chapter.

IN Code § 32-36-1-8(a).

20. The IRPA defines "right of publicity" as a "personality's property interest in the personality's: (1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7) distinctive appearance; (8) gestures; or (9) mannerisms." IN Code § 32-36-1-7.

21. The IRPA defines a "commercial purpose" as including: "For advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities." IN Code § 32-36-1-2(2).

22. The IRPA provides for, *inter alia*, statutory damages of $1,000.00 per violation, as well as recovery of any profits attributable to the unauthorized use of the person's name or likeness. IN Code § 32-36-1-6.

23. As explained below, Defendant disregarded its legal responsibilities to Plaintiff Morse and hundreds of thousands of other individuals by using their names to advertise and promote its services—in direct violation of the IRPA.

## FACTUAL BACKGROUND

24. Defendant has built a lucrative business selling subscriptions to its public relations software through the Website.[1]

25. In 2022, Defendant reported raising $180 million in a funding round from Susquehanna Growth Equity.[2]

26. As Defendant explains, its "PR [public relations] management software combines media database, pitching, monitoring and reporting to generate press coverage, protect brand reputation and boost PR performance, efficiency and collaboration."[3]

---

1 Muck Rack, "PR Software," available at https://muckrack.com/pr-software.

2 Ingrid Lunden, *TechCrunch*, "Muck Rack, the journalist database, raises $180 in its first outside funding" (Sept. 7, 2022), available at https://techcrunch.com/2022/09/07/muck-rack-the-journalist-database-raises-180m-in-its-first-outside-funding/.

3 Much Rack, "Muck Rack named to Inc. 5000 for third consecutive year" (Aug. 12, 2024), available at https://muckrack.com/blog/muck-rack-named-to-inc-5000-for-third-consecutive-year.

27. Muck Rack sells access to its public relations management software in three subscription tiers:[4]




28. Defendant's platform is much more than a journalist database.

29. Defendant's paid subscription plans offer various features such as "Media Monitoring & Alerts," "Media Database & Pitching," "Reporting & Analytics," and "Onboarding & Customer Support" tools.[5]

30. As reported by TechCrunch: "The company, based out of Miami, also provides a range of other tools for the media professional — including media monitoring, reporting and analytics and collaboration and pitching tools that it introduced in 2011, after running for two years solely as a journalist database — and as such is more generally part of the world of business

---

4 Muck Rack, "Pricing," available at https://muckrack.com/pricing.

5 Muck Rack, "Pricing," available at https://muckrack.com/pricing.

intelligence, specifically in the media category, and competes with the likes of Cision, Meltwater, Brandwatch and perhaps to some extent more targeted services like TechMeme."[6]

31. To advertise its public relations management software, Defendant publishes and promotes hundreds of thousands of "profile" pages on its Website using and centering around the names and identities of individual journalists.

32. As a part of this effort, Defendant systematically misappropriates the names and identities of Plaintiff and hundreds of thousands of other journalists to advertise and sell paid subscriptions to its products and services.

33. Defendant has published and disseminated these profile pages in Indiana.

**I. Defendant Uses Plaintiff's and the Putative Class Members' Names and Identities to Advertise Its Own Products and Services.**

34. Defendant advertises, promotes, and solicits sales of paid subscriptions to its products and services by publishing hundreds of thousands of publicly accessible profile pages, each one of which corresponds to an individual journalist and uses that journalist's name and identity to advertise Defendant's public relations software.

35. The following screenshot depicts the profile page Defendant published corresponding to the Plaintiff Erica Morse ("Plaintiff's Profile Page"):[7]

---

[6] Ingrid Lunden, *TechCrunch*, "Muck Rack, the journalist database, raises $180 in its first outside funding" (Sept. 7, 2022), available at https://techcrunch.com/2022/09/07/muck-rack-the-journalist-database-raises-180m-in-its-first-outside-funding/.

[7] Muck Rack, "Erica Morse's Profile | BiggerPockets, Haptical, Big Spring Herald Journalist | Muck Rack," available at https://muckrack.com/erica-morse.


MUCK RACK For PR Teams For Journalists Resources Pricing Company Log In Request Demo

# Erica Morse

**As seen in:** BiggerPockets, Haptical, Big Spring Herald

**Is this you?** As a journalist, you can create a free Muck Rack account to customize your profile, list your contact preferences, and upload a portfolio of your best work. Claim your profile

**Actions**

Share this page

**Is this you?**

As a journalist, you can create a free Muck Rack account to customize your profile, list your contact preferences, and upload a portfolio of your best work.

Claim your profile

**Get in touch with Erica**

Contact Erica, search articles and posts on X, monitor coverage, and track replies from one place.

Learn more about Muck Rack

**Articles**

**Lender for 5th to 10th conventional loans**

a year ago | By Erica Morse | BiggerPockets

Followed Discussions Followed Categories Followed People Followed Locations Classifieds Market News & Data General Info Real Estate Strategies Landlording & Rental Properties Real Estate Professionals Financial, Tax, & Legal Real Estate Classifieds Reviews & Feedback Updated 1 minute ago on 08/21/2025. Most recent reply 2 Posts 0 Votes What are the best lenders for 5th to 10th conventionl loans? Curious to see who's interested in your profile?

Open in Who Shared Issue with article?

**Peaceful protest in Big Spring**

6 years ago | By Erica Morse | Big Spring Herald

Open in Who Shared Issue with article?

**DNA excludes woman claiming to be missing Jennifer Klein**

9 years ago | By Erica Morse | victimsnewsonline.com

(VNO) — Victims News Online has confirmed that a DNA sample taken from an Illinois woman does not match that of a three-year-old girl who disappeared from Utah in 1974. Three-year-old Jennifer Lee Klein disappeared from a campground in Moab, Utah, on May 25, 1974, after her parents were distracted by a dogfight. It is believed Jennifer may have fallen into a nearby river, but that has never been confirmed.

Open in Who Shared Issue with article?

See all 10 articles

36. As shown above, Plaintiff's name is the largest and most prominent text on Plaintiff's Profile Page.

37. Underneath Plaintiff's name is a line of text which states "As seen in: BiggerPockets, Haptical, Big Spring Herald"—each of which is a publication where Plaintiff's work has been published.

38. Further down, Plaintiff's Profile Page excerpts three articles authored by Plaintiff across various media publications.

39. Plaintiff's Profile Page also advertises and promotes Defendant's public relations software in several ways.

40. First, Plaintiff's Profile Page includes a prominent element labelled with the text "Get in touch with Erica," as shown below.




41. As shown above, this element of Plaintiff's Profile Page further states: "Contact Erica, search articles and posts on X, monitor coverage, and track replies from one place."

42. Plaintiff has never registered or signed up for Defendant's online platform or any other service offered by Defendant. She is therefore unaware of any means by which a someone could "Get in touch" or "contact" her through Defendant's online platform or public relations software.

43. As shown above, this element of Plaintiff's Profile Page further includes a clickable button which states "Learn more about MuckRack."

44. When clicked, this button leads to a separate webpage which also promotes Defendant's public relations management software and encourages internet users to "Request Demo" by clicking on a hyperlinked button. A screenshot from that page is reproduced below[8]:




45. Second, Plaintiff's Profile Page includes a banner across the top with various clickable buttons which promote Defendant's products and services, including buttons stating "Platform", "Solutions", "Why Muck Rack", "Pricing", and ""Request a demo"

[8] Muck Rack, "PR software powered by trusted intelligence," available at https://muckrack.com/pr-software.

46. When clicked, the "Request a demo" button leads internet users to a separate page which also promotes Defendant's public relations management software and permits users to sign up for a "demo" of the software. A screenshot from this page is reproduced below[9]:




9 Muck Rack, "Grow and show PR's value," available at https://muckrack.com/demo-request/request-demo.

47. Defendant's purpose and intent in offering "demos" of its public relations management software is to obtain paying customers of that software.

48. When clicked, the "Pricing" button leads to a webpage which advertises Defendant's various subscription tiers for its public relations management software.[10]

49. When clicked, the "Why Muck Rack" button expands to show various links including one entitled "Customer Stories" and another entitled "Security and Trust," as shown below:




50. When clicked, the "Solutions" button expands to show various links organized according to the solutions provided by Defendant's software "By Team", "By Goal", and "By Industry", as shown below:

10 Muck Rack, "Pricing," available at https://muckrack.com/pricing.




51. When clicked, the "Platform" button expands to show various links permitting internet users to "Explore the platform", as shown below:




52. Plaintiff's Profile Page is representative of the hundreds of thousands of similar such profile pages published and disseminated by Defendant on the Website. Each profile page

contains the same page elements, including the page element stating "Get in touch with [name of journalist]" (along with the text and button promoting Defendant's products and services) and the banner across the top (with the same clickable buttons). The only differences between the profile pages are the names, identities, and PII (e.g., the publications and links to news articles) corresponding to the individual journalists to whom each page corresponds.

53. Defendant created, published, and disseminated hundreds of thousands of similar profile pages misappropriating the names and corresponding personally identifying information ("PII") of hundreds of thousands of journalists, and included page element promoting its software and buttons on each of them routing into its sales pipeline, for the singular commercial purpose of selling more subscriptions to its products and services.

54. Defendant uses the names, identities, and corresponding PII of the putative class members on these profile pages as bait to attract internet users to the website and to entice non-paying visitors to the Website into becoming paying subscribers to Defendant's software platform.

55. Defendant generates a substantial amount of revenue from its sales of subscriptions to persons who entered Defendant's sales pipeline through the profile pages it publishes on the Website.

56. Defendant never requested or obtained consent from Plaintiff to use her name, identity, or personally identifying information to advertise its own products and services.

## II. Defendant Uses Plaintiff's and the Class Members' Names in Search Engine Optimization Techniques on Their Profile Pages to Advertise Its Own Products and Services

57. Defendant further intentionally uses Plaintiff Morse's name and the names of hundreds of thousands of other journalists in search engine optimization ("SEO") techniques built into the profile pages.

58. Defendant uses these names in SEO techniques in order to trade on the commercial value associated with the names. Defendant's goal is to attract internet users who are searching for the individuals' names to the profile pages so that they see the advertisements for Defendant's own products and services therein.

59. Specifically, Defendant uses the names in this manner to ensure that the profile pages rank highly in search engine results whenever someone searches for the corresponding individual's name—and thereby more effectively advertise Defendant's own products and services.

60. Defendant uses these names in following specific SEO techniques on each profile page:

- **Placing the journalist's name in the page's URL.** For example, Plaintiff Morse's name appears in the URL for her profile page[11]:




- **Placing the journalist's name in the page's title.** For example, Plaintiff Morse's name appears in the page title for Plaintiff Morse's Profile Page, which is entitled "Erica Morse's Profile | BiggerPockets, Haptical, Big Spring Herald Journalist | Muck Rack"[12]:

---

[11] Muck Rack, "Erica Morse's Profile | BiggerPockets, Haptical, Big Spring Herald Journalist | Muck Rack," available at https://muckrack.com/erica-morse..

[12] *Id.*




This page title is reflected in the following line of Plaintiff Morse's Profile Page's html source code: <title> Erica Morse's Profile | BiggerPockets, Haptical, Big Spring Herald Journalist | Muck Rack</title>

- **Placing the journalist's full name on the page multiple times.** For example, Plaintiff Morse's name appears on Plaintiff Morse's Profile Page at least six separate times.

- **Placing the journalist's name in the page's headers.** For example, Plaintiff Morse's name appears in the first-level "header" on Plaintiff Morse's Profile Page.[13] This is reflected on the face of the page and in the following line of the page's source code: <h1 class="profile-name mt-0 ">"Erica Morse"</h1>

- **Placing the journalist's name in the meta 'description' tag of the page's source code.** A 'description' meta tag is a piece of code placed on a website which structures search engines' understanding of the content on the page. Defendant's use of journalists' names in this technique ensures that search engines pick up the names when indexing pages and display the page in results generated in response

[13] *See* Amelia Willson, Search Engine Journal, *How To Use Header Tags: SEO Best Practices* (May 31, 2024), available at https://www.searchenginejournal.com/on-page-seo/header-tags/.

to queries including the name.[14] The ‘description’ meta tag is reflected in the following line of the source code on Plaintiff Morse’s Profile Page: `<meta property="og:description" content="Find Erica Morse's articles, email address, contact information, Twitter and more">`.

- **Placing the journalist’s name in Schema.org descriptors.** Including the journalists’ names in Schema.org descriptors embedded in the pages’ source code ensures that search engines recognize the names as names, and are able to calibrate search engine results accordingly.[15] The Schema.org descriptors are reflected in the following line of the source code on Plaintiff Morse’s Profile Page: `{"@context": "https://schema.org", "@type": "ProfilePage", "url": "https://muckrack.com/erica-morse", "name": "Erica Morse's Profile | BiggerPockets, Haptical, Big Spring Herald Journalist | Muck Rack", "description": "Find Erica Morse's articles, email address, contact information, Twitter and more",`

---

[14] *See, e.g.*, Google Search Central, “Meta Tags and Attributes that Google Supports,” available at https://developers.google.com/search/docs/crawling-indexing/special-tags (explaining “meta tags are HTML tags used to provide additional information about a page to search engines and other clients.”) (also stating with respect to the ‘description’ meta tag: “Use this tag to provide a short description of the page. In some situations, this description is used in the snippet shown in search results.”).

[15] *See* Schema.org, *Getting started with schema.org using Microdata*, available at https://schema.org/docs/gs.html. Schema.org descriptors are used solely for the purpose of improving the search engine optimization of a webpage.

"mainEntity": {"@type": "Person", "name": "Erica Morse", "url": "https://muckrack.com/erica-morse", "image": {"@type": "ImageObject", "url": "https://cdn.muckrack.com/static/images/icon-user-circle.e3d7f0e7.png", "width": 256, "height": 256}}, "hasPart": [{"@type": "NewsArticle", "headline": "Lender for 5th to 10th conventional loans", "url": "https://www.biggerpockets.com/forums/517/topics/1258947-lender-for-5th-to-10th-conventional-loans", "datePublished": "2025-08-21", "author": {"@type": "Person", "name": "Erica Morse"}, "publisher": {"@type": "NewsMediaOrganization", "name": "BiggerPockets"}}, {"@type": "NewsArticle", "headline": "Peaceful protest in Big Spring", "url": "https://www.bigspringherald.com/multimedia/peaceful-protest-in-big-spring/video_d9e3e408-a3a7-11ea-b5c2-532931f06378.html", "datePublished": "2020-05-31", "author": {"@type": "Person", "name": "Erica Morse"}, "publisher": {"@type": "NewsMediaOrganization", "name": "Big Spring Herald"}}, {"@type": "NewsArticle", "headline": "DNA excludes woman claiming to be missing Jennifer Klein", "url": "https://victimsnewsonline.com/2017/07/dna-excludes-woman-claiming-to-be-missing-jennifer-klein/",

"datePublished": "2017-07-20", "author": {"@type": "Person", "name": "Erica Morse"}, "publisher": {"@type": "NewsMediaOrganization", "name": "victimsnewsonline.com"}}]}.

61. Each of these web design techniques is intended to optimize the ranking of the profile pages in search engine results when a user searches for the name of an individual with a profile page—and thereby increase sales of subscriptions to Defendant's platform.

62. As noted by TechCrunch, these SEO techniques have been extremely successful at making the profile pages among the top results in search engines whenever someone enters a query for the name of a journalist: "For any journalist who has ever googled their name, or for anyone else who has ever googled a journalist's name, there is a good chance that one of the top hits will be for Muck Rack."[16]

63. This is further evidence of Defendant's intent to make the profile pages rankly as high as possible when a user submits a query on a search engine for the name of any individual whose information is contained in Defendant's Muckrack.com platform.

64. Plaintiff is informed and believes, and thereupon alleges, that during the time period relevant to this action numerous non-subscribers to Defendant's platform performed searches on Google and other search engines that yielded results including hyperlinks to the Plaintiff's profile page, along with summaries of the information available on the profile pages in the search-engine results themselves (including Plaintiff's name and other PII).

---

[16] Ingrid Lunden, *TechCrunch*, "Muck Rack, the journalist database, raises $180 in its first outside funding" (Sept. 7, 2022), available at https://techcrunch.com/2022/09/07/muck-rack-the-journalist-database-raises-180m-in-its-first-outside-funding/.

65. Plaintiff is informed and believes, and thereupon alleges, that during the time period relevant to this action numerous non-subscribers to Defendant's services visited Plaintiff's profile page by clicking on links to the page in the results page of a search performed on Google or another search engine.

66. Defendant tracks, *inter alia*, the number of times when (by date and time) and from where (by, *inter alia*, IP address) each of each profile pages is viewed by a non-subscriber, the location from which the visitor to the page originated (such as a Google search results page), and the total numbers of persons who have visited a particular profile page.

67. Defendant continues to improve the coding of its profile pages to maximize their visibility to the consuming public in the results yielded by searches on Google and other popular search engines, and employs persons (and works with contractors) who focus specifically on these efforts.

## CLASS ACTION ALLEGATIONS

68. Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff brings this action, on behalf of herself and members of the Class defined as follows:

> All natural persons residing in the state of Indiana for whom Defendant established a profile page on MuckRack.com and who have not created an account on MuckRack.com.

69. Excluded from all Class are Defendants' officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

70. Plaintiff Morse reserves the right to modify the definitions of the Class, including based on discovery and further investigation.

71. The members of the Class are so numerous that their individual joinder herein is impracticable. Plaintiff is informed and believe, and thereupon alleges, that the members of the Class number in the millions. The precise number of members of the Class and their identities are unknown to Plaintiff at this time but will be readily determined in discovery, including by reference to Defendant's records. Members of the Class may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

72. Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent in that Plaintiff and all members of the Class were injured and sustained damages by Defendant's uniform wrongful conduct—namely, Defendant's practices of using Plaintiff's and the Class's names and corresponding PII to advertise, sell, and promote, and to solicit sales of subscriptions to its platform, without any of their consent.

73. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members. Legal and factual questions common to the Class include, but are not limited to:

a. Whether Defendant engaged in the alleged conduct;

b. Whether Defendant knowingly used the names and identities of the members of the Class;

c. Whether Defendant used their names, identities, and other PII for the purposes of advertising its products, merchandise, goods, or services;

d. Whether Defendant had their consent to use their names, identities, or PII in this way;

e. Whether members of the Class are entitled to recover statutory damages;

f. Whether members of the Class are entitled to equitable relief, including injunctive relief.

74. Plaintiff Morse is an adequate representative of the Class because her interests do not conflict with the interests of the other members of the Class she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff Morse and her counsel.

75. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of such issues.

## CLAIM FOR RELIEF

**Violation of Indiana's Right of Publicity Act, IN Code § 32-36-1**
**(By Plaintiff Morse, Individually and On Behalf of the Class)**

76. Plaintiff, individually and on behalf of the Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

77. Defendant is a corporation and thus a juristic "person" within the meaning of the IRPA. *See* IN Code § 32-36-1-5.

78. During the time period relevant to this action, Defendant publicly used the names, identities, and other personally identifying attributes of Plaintiff Morse and the Class members in the manner alleged herein, including by using such names, identities, and other personally identifying information on profile pages to advertise Defendant's own products and services.

79. Defendant's use of Plaintiff Morse's and the Class members' names, identities, and personally identifying information on profile pages to advertise Defendant's own products and services constitutes a "use" of those identities "in connection with a product, merchandise, goods, services, or commercial activities" or "for advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities" within the meaning of "commercial purposes" as it is defined in the IRPA. *See* IN Code §32-36-1-2.

80. Defendant's public relations management software constitutes "products", "merchandise", "goods", "services", or "commercial activities" within the meaning of the IRPA. *See id*.

81. Defendant has published and disseminated the profile pages in Indiana.

82. Prior to using and holding out Plaintiff Morse's and the Class members' names and other personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff Morse nor any member of the Class that it would do so, and neither Plaintiff Morse nor any member of the Class has ever consented (in writing or otherwise) to Defendant doing so.

83. By using Plaintiff Morse's and the Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior

consent, Defendant infringed upon Plaintiff Morse's and the Class members' rights of publicity in violation of the IRPA.

84. Significant commercial value exists in the aspects of Plaintiff Morse's and the other Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

85. Defendant's use Plaintiff Morse's and the Class members' names, identities, and other personally identifying information in profile pages to advertise Defendant's own products and services, including its public relations management software, was not incidental. On the contrary, it was instrumental (and continues to be instrumental) to Defendant in obtaining paying customers. This is demonstrated by the sheer volume of profile pages used to advertise Defendant's own products and services.

86. On behalf of herself and the Class, Plaintiff Morse seeks: (1) an injunction requiring Defendant to obtain prior consent from the Class members prior to the use of their names and identities to advertise products or services; (2) $1,000.00 in statutory liquidated damages to Plaintiff Morse and each Class member; and (3) costs and reasonable attorneys' fees. *See* Indiana Code § 32-36-1-10; Indiana Code § 32-36-1-12.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of the members of the Class, as follows:

A. For an order certifying the Class pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiff Morse as representative of the Class and Plaintiff's undersigned attorneys as counsel to represent the Class;

B. For an order entering judgment in favor of Plaintiff and the members of the Class on all claims for relief stated herein;

C. For an order awarding Plaintiff and the members of the Class actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in the amounts set by statute or to be proven at trial;

D. For an order for appropriate injunctive relief;

E. For an order awarding pre- and post-judgment interest according to law; and

F. For an award of attorneys' fees, costs and expenses to Plaintiff's counsel.

**DEMAND FOR JURY TRIAL**

Plaintiff Morse, on behalf of herself and members of the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and issues so triable.

Dated: November 9, 2026

Respectfully submitted,

*s/ Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

***Local Counsel for Plaintiff and the Proposed Class***

Frank S. Hedin*
**HEDIN LLP**
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com

Tyler K. Somes*
**HEDIN LLP**
1100 15th Street NW, Ste 04-105K
Washington, D.C. 20005
Telephone: (202) 900-3331
E-Mail: tsomes@hedinllp.com

***Counsel for Plaintiffs and Proposed Class***

* *Pro Hac Vice Application Forthcoming*